USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/28/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
                           :

JOHN D. HUBER,                      :
                           :

            Plaintiff,       :         12-CV-8175 (JMF)
                           :

        -v-                  :     MEMORANDUM OPINION
                           :       AND ORDER

ARCK CREDIT COMPANY, LLC, et al.,  :
                           :

          Defendants.     :
                           :
-------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This case involves a set of disputes among several parties to loans relating to the

purchase of high-value art.  John D. Huber, in his capacity as Trustee of the SageCrest

Liquidating Trust, originally brought suit against ARCK Credit Company, LLC ("ARCK"), Art

Finance Partners, LLC ("AFP"), Andrew C. Rose, and Christopher D. Krecke (collectively, the

"ARCK Parties") for failure to satisfy a loan made to ARCK.  The ARCK Parties, in turn,

brought counterclaims against Huber and third-party claims relating to other loans against

several other people and entities, including Foundation 20 21 ("Foundation") and Timothy U.

Nye (together, the "Nye Parties").  After about two years of somewhat messy litigation, all

disputes settled except for the third-party claims against the Nye Parties, which were scheduled

to be resolved in a bench trial beginning on November 17, 2014.  On the morning of trial,

however, the Nye Parties consented to judgment on all of the ARCK Parties' claims save one:

their claim that the Nye Parties are obligated to indemnify them for liabilities relating to the first-

party action between Huber and the ARCK Parties.  (Final Order and Judgment (Docket No.

229) ("Judgment")).  The Court heard brief testimony on that issue and granted the parties leave

to file supplemental briefs addressing the scope of the relevant indemnification provisions.  The
Court has considered the testimony and all relevant submissions, including exhibits, and now
issues the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The Court assumes familiarity with the relevant background, and makes the following
findings of fact.  The relevant dispute relates to five separate loan agreements.  First, on May 24,
2006, ARCK extended a loan to Foundation (the "Foundation Loan").  (ARCK Ex. 1).  That
same day, Foundation entered an origination agreement for the Foundation Loan (the
"Foundation Origination Agreement") with AFP.  (ARCK Ex. 11).  The funding for the
Foundation Loan came from a prior loan (the "SageCrest Loan") that ARCK had taken out from
SageCrest II, LLC and SageCrest Finance, LLC (together, "SageCrest").  (ARCK Exs. 53, 58).
In the negotiations leading to the Foundation Loan, ARCK informed Foundation that the loan
was contingent on ARCK securing the necessary funding from SageCrest.  (Nov. 17, 2014 Trial
Tr. (Docket No. 236) ("Trial Tr.") 22:5-7).  Finally, on July 27, 2011, more than five years later
and after several extensions of the Foundation Loan, an entity known as AF Funding, LLC ("AF
Funding") extended a personal loan to Nye (the "Nye Loan").  (ARCK Ex. 183).  As with the
Foundation Loan, Nye simultaneously entered an origination agreement with AFP (the "Nye
Origination Agreement").  (ARCK Ex. 188).  ARCK, AFP, and AF Funding were at all relevant
times owned and controlled by Andrew C. Rose or by Rose and Christopher D. Krecke.  (*See*
Proposed Findings of Fact Conclusions Law Art Parties (Docket No. 207) ¶¶ 1-6)).

All four agreements between and among the ARCK Parties and the Nye Parties — the
Foundation Loan, the Foundation Origination Agreement, the Nye Loan, and the Nye
Origination Agreement — contained extremely broad indemnification clauses.  The

indemnification clause in the Foundation Loan, for example, provides that Foundation would indemnify ARCK, its affiliates, and their personnel for any liability "arising out of[] the [Foundation] Loan, the Other Agreements, the documentation related thereto, any other loan related thereto, any actions or failures to act in connection therewith, and any and all liabilities and legal costs and expenses arising out of or incurred in connection with any disputes between or among any parties to any of the foregoing." (ARCK Ex. 1 § (8)(n)(i); *see also* ARCK Ex. 183 § (8)(n)(i) (same)). The term "Other Agreements" is defined, in turn, as "any promissory note, loan or other agreement (including any amendments, modifications, or renewals of any of the foregoing), regardless of the source or nature of the underlying transaction, including but not limited to [the Foundation] Origination Agreement" (ARCK Ex. 1 § (1)(f)). At trial, Rose testified that the indemnification provisions were intended to cover "everything, including the kitchen sink." (Trial Tr. 22: 19-20). But, as he conceded, none of the indemnification provisions contains a specific reference to the SageCrest Loan, and ARCK requested no such reference. (*Id.* at 28: 21-24). Timothy U. Nye and a representative of Foundation invoked the Fifth Amendment privilege against self-incrimination and did not testify at trial. (Docket Nos. 221-22).

## CONCLUSIONS OF LAW

The Court turns to its conclusions of law. The parties agree that whether the costs associated with the first-party action are covered by the indemnification provisions at issue is controlled by New York law. (*See, e.g.*, ARCK Ex. 1 § 8(m) (forum selection clause)). "Under New York law, the burden of proof in an action for breach of contract is on the plaintiff to prove the elements of its complaint by a preponderance of the evidence." *Marini v. Adamo*, No. 08-CV-3995 (JFB) (ETB), 2014 WL 1426028, at *2 (E.D.N.Y. Apr. 15, 2014) (internal quotation marks omitted). Accordingly, in order to prevail, the ARCK Parties must prove by a

preponderance of the evidence that the disputed liabilities were covered by the indemnification provisions.

When interpreting a contract, New York courts look first to the language of the contract, proceeding to consider extrinsic evidence of the parties' intent only when the language is ambiguous.  *See, e.g.*, *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244 (2014).  "A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion."  *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002) (internal quotation marks omitted).  "Conversely, . . . a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement."  *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011).  In applying this framework, however, the Court is mindful of the New York Court of Appeals' guidance with respect to indemnification agreements that "a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.  The promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances."  *Great N. Ins. Co. v. Interior Constr. Corp.*, 7 N.Y.3d 412, 417 (2006) (quoting *Hooper Assoc. v AGS Computers*, 74 N.Y.2d 487, 491-92 (1989)).

Applying those principles, the Court concludes that the ARCK Parties have failed to carry their burden of showing that the Nye Parties must indemnify them for the costs associated with the first-party action.  First, the indemnification clauses in the Foundation and Nye Origination Agreements do not cover liabilities incurred with respect to the SageCrest Loan.

The broadest provision within those agreements' indemnification clauses provides that the borrower will indemnify AFP, its affiliates, and their personnel for all liabilities "arising out of this Agreement, and the transactions contemplated hereby."  (ARCK Ex. 11 § 4(a); ARCK Ex. 188 § 4(a)).  Viewed in isolation, the phrase "transactions contemplated hereby" could conceivably sweep broadly enough to encompass any agreement that is tangentially related to the Foundation or Nye Loans.  But "[a]lthough the words [in an indemnification clause] might seem to admit of a larger sense, . . . they should be restrained to the particular occasion and to the particular object which the parties had in view."  *Fresh Del Monte Produce N.V. v. Eastbrook Caribe A.V.V.*, 836 N.Y.S.2d 160, 163 (App. Div. 1st Dep't 2007) (internal quotation marks omitted).  And here, when "transactions contemplated hereby" is read in the context the origination agreements and in light the larger transactions, the only plausible reading of "transactions contemplated hereby" is the relevant loan (the Foundation or Nye Loan) and any extensions of that loan.  That each indemnification clause refers to agreements *plural* while there was only one loan does not require a contrary conclusion.  The Origination Agreements expressly contemplate extensions of the relevant loan and provide that AFP is to be compensated for each extension.  (ARCK Ex. 11 § 1(b); ARCK Ex. 188 § 1(b)).

The Court would reach the same conclusion even if the provisions were ambiguous.  Put simply, although the Nye Parties invoked their Fifth Amendment privilege, and that invocation can give rise to a negative inference, *see, e.g.*, *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997), Rose's testimony is insufficient to carry the ARCK Parties' burden.  First, Rose's testimony that the indemnification provisions were intended to cover liabilities related to the SageCrest Loan appears limited to the indemnification provisions in the Foundation and Nye Loans and, therefore, has limited or no significance to interpretation of the Origination

Agreements.  (*See* Trial Tr. 22: 5-11, 15-20 (referring to the "loan agreements" without any reference to the accompanying origination agreements); Aff. Andrew Rose ("Rose Aff.") ¶¶ 73, 78 (reciting the indemnification provision without stating whether it was intended to cover the SageCrest Loan)).  Even if Rose's general statements about the scope of the indemnification provisions were construed to encompass the Origination Agreements, his statements would still be insufficient to carry the ARCK Parties' burden given the skepticism with which courts view a party's post-hoc statements of intent made for purposes of litigation.  *See, e.g.*, *Madeleine, LLC v. Casden*, 950 F. Supp. 2d 685, 694 (S.D.N.Y. 2013) ("[A] post hoc, lawyer-and-litigation-driven position [may] hav[e] nothing to do with the actual intent of the parties at the time of drafting."); *see also, e.g.*, *Israel v. Chabra*, 601 F.3d 57, 65 n.2 (2d Cir. 2010*)* ("[O]ur role in interpreting a contract is to give effect to the intent of the parties at the time of the contract's making, not the position they found it necessary to adopt during litigation.").  Finally, even taking Rose's testimony at face value, it shows only that the *ARCK Parties* understood the indemnification clauses to cover the SageCrest Loan, not that the Nye Parties shared that understanding.

Whether the indemnification provisions in the Nye and Foundation Loans cover the costs associated with the first-party action is a closer question.  The broadest provision of the loan agreements provides that the borrower will indemnify ARCK, its affiliates, and their personnel for all liabilities "incurred . . . *in connection with, or arising out of*, the Loan, the Other Agreements, the documentation thereto, *any other loan related thereto*, any actions or failures to act in connection therewith, and any and all liabilities and legal costs."  (ARCK Ex. 1 § (8)(n)(i) (emphasis added); *see* Supplemental Mem. Further Supp. Indemnification Regarding SageCrest's Claims (Docket No. 243) ("ARCK Supp. Mem.") 7-8).  In the abstract, the phrases

"in connection with," "arising out of," and "related thereto" are certainly broad enough to encompass the costs associated with the SageCrest Loan.  But the Court's task is not to interpret the provision in the abstract, but rather in "the context of the entire . . . agreement," *Lockheed Martin*, 639 F.3d at 69, and the context here favors the Nye Parties.  In particular, although the SageCrest Loan was on the books for more than a year prior to the Foundation Loan and more than five years prior to the Nye Loan, neither loan contains any reference to the SageCrest Loan or even a general reference to an obligation on the part of the Nye Parties to indemnify ARCK for costs related to *ARCK's* financing.  *Cf. Katzman v. Helen of Troy Tex Corp.*, No. 12-CV-4220 (PAE), 2013 WL 325562, at *7 n.6, *14 n.12 (S.D.N.Y. Jan. 28, 2013) (applying New York law and finding it odd that an agreement "which addresses indemnification at length, does not contain any other provision that fairly implies that the parties intended thereby to put in place such a sweeping and uncommon form of indemnification," notwithstanding broad language in the indemnification that could be read to support such a claim).

The lack of any reference to SageCrest in the loan documents is especially noteworthy given that both loans *expressly* reference the AFP Origination Agreement in defining the "Obligations" covered by the agreement.  (ARCL Ex. 1 § 1(f); ARCK Ex. 183 § 1(f)).  The two-part definition provides, first, that essentially any agreement between the "Lender" (ARCK) and the "Borrower" (Foundation) is covered by the indemnification clause.  Second, in defining the term "Other Agreements" the Loans extend the indemnification clause to cover "any promissory note, loan, or other agreement . . . regardless of the source or nature of the underlying transaction, including but not limited to" the origination agreements with AFP.  (ARCK Ex. 1 § 1(f); ARCK Ex. 183 § 1(f)).  The references to the relevant origination agreement make plain that the parties to the loan agreements knew how to draft the agreements to explicitly cover

7

existing loans; the absence of any explicit reference to the SageCrest Loan, therefore, weighs strongly against the ARCK Parties' preferred reading.  In short, the ARCK Parties fail to demonstrate that the indemnification provisions explicitly cover the costs associated with the SageCrest Loan, or that such coverage is "clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances."  *Drzewinski v. Atl. Scaffold & Ladder Co.*, 70 N.Y.2d 774, 777 (1987) (internal quotation marks omitted) (holding that an indemnification provision covered a negligence claim despite the fact that "the indemnity clause does not contain express language referring to the negligence of the indemnitee" because such coverage was "clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances").

The extrinsic evidence in the record does not call for a different result.  To be sure, Rose's testimony at trial and in his affidavit indicates that *ARCK* may have understood the parties to have intended the indemnification provision to cover the SageCrest Loan.  (*See, e.g.*, Trial Tr. 21-22; Rose Aff. ¶ 84).  Nevertheless, the Court concludes that Rose's testimony — even considered together with the negative inferences arising from the Nye Parties' invocation of the Fifth Amendment privilege — is not sufficient to overcome the absence of any reference to the SageCrest Loan in either the Foundation or Nye Loans.  The most the testimony shows is that Rose believed that the SageCrest Loan was covered by the indemnification provisions and that he told Nye that the SageCrest Loan was a prerequisite to the Foundation Loan.  But that does not show that the *both* sides understood the SageCrest Loan to fall within the indemnification clauses.  For similar reasons, the fact that ARCK put the payments from Foundation into a "blocked account established by SageCrest" does not shed light on the parties' shared intent. (ARCK Supp. Mem. 9; *see* Rose Aff. ¶ 13).  Although the ARCK Parties are correct that the

parties' pre-litigation conduct may provide compelling evidence of their intent, *see W. Alton Jones Found. v. Chevron U.S.A., Inc.*, 97 F.3d 29, 33 (2d Cir. 1996), the conduct the ARCK Parties cite does not shed any light on the Nye Parties' understanding of the indemnification provisions.

## CONCLUSION

In short, the Court concludes that the ARCK Parties have failed to show that it is more likely than not that the indemnification provisions in the Foundation and Nye Loans covered liabilities associated with the SageCrest Loan.  Accordingly, the Court concludes that the ARCK Parties are not entitled to recover the costs associated with the first-party action.  Thus, the judgment to which the Nye Parties previously consented fully resolves the disputes between the parties, and the Clerk of Court is directed to close the case.


SO ORDERED.

Date:   January 28, 2015
        New York, New York

_____
JESSE M. FURMAN
United States District Judge