UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
JOHN D. HUBER,                                                    :
                                                                  :
                              Plaintiff,                          :          12-CV-8175 (JMF)
                                                                  :
              -v-                                                 :          OPINION AND ORDER
                                                                  :
ARCK CREDIT COMPANY, LLC, et al.,                                :
                                                                  :
                              Defendants.                         :
                                                                  :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  02/05/2016

JESSE M. FURMAN, United States District Judge:

These post-judgment motions in this long-running and slightly tortured litigation concern

efforts by Third Party Plaintiffs, ARCK Credit Company LLC, Art Finance Partners, LLC,

Andrew Rose, and Christopher Krecke (together, "Third Party Plaintiffs"), to collect on a multi-

million dollar judgment entered on consent against Third Party Defendants, Timothy Nye and

Foundation 20 21 (together, "Third Party Defendants").  Third Party Plaintiffs now move to

compel discovery and to hold Third Party Defendants in contempt (among other requests), while

Third Party Defendants cross move for various forms of injunctive relief.  For the reasons stated

below, Third Party Plaintiffs' motion is GRANTED in part and DENIED in part, and Third Party

Defendants' motion is DENIED in its entirety.

## BACKGROUND

The underlying complaint in this action, brought by Plaintiff John D. Huber, asserted

claims relating to Third Party Plaintiffs' default on certain loans.  (*See* Compl. (Docket No. 1)).

Third Party Plaintiffs in turn asserted third party claims against a number of parties, including

Third Party Defendants here, to whom the Third Party Plaintiffs had themselves made loans or

who were guarantors of the other third party defendants.  (*See* Third Party Compl. (Docket No. 13)).  The Third Party Complaint alleged that Third Party Plaintiffs' liability for the underlying loan was due to the third party defendants' failures to pay the third party loans.  (*Id.* ¶ 19).  The original claims and many of the third party claims settled.  (*See* Docket Nos. 139, 164, 180).  Third Party Plaintiffs' claims against Third Party Defendants Nye and Foundation 20 21 proceeded.  On the eve of trial, Third Party Defendants consented to entry of a judgment, which was filed on November 18, 2014.  (Final Judgment & Order ("Judgment") (Docket No. 229)).  Among other things, the Judgment awarded Third Party Plaintiffs over $3 million plus interest from Third Party Defendants and ordered the delivery of certain pieces of art.  (Judgment ¶¶ 2(a)-(b), (h)).

The facts pertinent to the instant motions occurred following entry of judgment.  Third Party Plaintiffs have since engaged in various efforts to collect on the Judgment.  Among other things, they served document requests and information subpoenas on Third Party Defendants and non-parties Nyehaus Inc. ("Nyehaus") and Sunshine Equity Partners ("SEP") (together with Third Party Defendants, the "Nye Parties") — entities wholly owned by Nye (*see* Decl. of Mathew E. Hoffman (Docket No. 318) ("Hoffman Contempt Decl.") 2 n.1) — seeking information about Third Party Defendants' assets and financial condition.  (*See* Hoffman Contempt Decl., Exs. A, H-M, R-S).  They also noticed Nye's deposition and Rule 30(b)(6) depositions for Nyehaus and Foundation 20 21.  (*See* Ltr. from Mathew E. Hoffman (Docket No. 258)).  Following a discovery conference, the Court ordered the Nye Parties to comply with these discovery requests.  (*See* Order (Docket No. 260) ("March 4th Order")).  Third Party Plaintiffs also served a restraining notice, pursuant to Federal Rule of Civil Procedure 69 and New York Civil Practice Laws and Rules Section 5222, on Mana Contemporary LLC ("Mana"),

an art storage facility in New Jersey that allegedly holds art and files belonging to the Nye Parties.  (*See* Decl. Lindsay E. Hogan, Esq. Supp. Mot. To Enjoin Unreasonable Disposition Collateral, Full Accounting, & To Vacate Third-Party Restraining Notice (Docket No. 358) ("Hogan Injunction Decl."), Ex. D).

Nye sat for a deposition, but refused to answer each and every question on the basis of the Fifth Amendment privilege against self-incrimination, and served responses and objections to Third Party Plaintiffs' document requests and an information subpoena.  (*See* Hoffman Contempt Decl., Exs. H, J, M, S).  For the most part, Nye's written discovery responses assert the Fifth Amendment privilege as well, although in his second amended responses and objections to Third Party Plaintiffs' document requests he does identify certain responsive documents that have been produced.  (*See id.*, Ex. S).  Foundation 20 21 served responses and objections to document requests on March 12, 2015.  (*See id.*, Ex. I).  Nyehaus and SEP provided responses and objections both to an information subpoena and document requests.  (*See id.*, Exs. A, K, L, R).  Third Party Plaintiffs estimate that a few hundred documents have been produced, ninety-one pages of which were produced following the Court's March 4th Order directing the Nye Parties to comply.  (*See id.* ¶¶ 16, 18).  Danielle Forest also testified as the Rule 30(b)(6) witness for both Nyehaus and Foundation 20 21.  (*See* Aff. Danielle Forest (Docket No. 354) ("Forest Contempt Decl.") ¶ 9).

The Nye Parties have delivered to Third Party Plaintiffs many of the pieces listed in the Judgment, but some remain outstanding.  (*See* Third-Party Defs. Timothy Nye's & Foundation 20 21's & Non-Parties Nyehaus Inc.'s & Sunshine Equity Partners, Inc.'s Opp'n Third-Party Pls.' Mot. Contempt (Docket No. 353) ("Nye Parties' Opp'n") 5-6).  Third Party Plaintiffs sold some of this art through an online auction, receiving approximately $150,000 in proceeds.  (*See*

Decl. Andrew C. Rose (Docket No. 382) ("Rose Vacate Decl.") ¶¶ 11-14).  Andrew Rose, one of the Third Party Plaintiffs, testifies that he is in the process of trying to sell the remaining art. (*See id.* ¶ 15).[1]

## DISCUSSION

Broadly speaking, Third Party Plaintiffs seek sanctions and an order compelling the Nye Parties to remedy deficient discovery responses in violation of this Court's prior Orders. Because the Court agrees that the Nye Parties are flagrantly in violation of the Court's Orders, it holds that Third Party Plaintiffs are entitled to some — but not all — of their requested relief.  In particular, the Court finds that contempt and sanctions are warranted; that the Nye Parties must supplement their discovery responses, including with otherwise privileged documents because they have waived their privilege; that SEP must produce a Rule 30(b)(6) witness; that Nye must be re-deposed after adjudication of whether and to what extent he properly asserted his Fifth Amendment privilege; that the Nye Parties must turn over the specific art identified in the Wilbur Affidavit; and that Third Party Plaintiffs are entitled to fees and costs from the Nye Parties.  For their part, Third Party Defendants seek injunctive relief with respect to Third Party Plaintiffs' allegedly improper disposition of collateral and the restraining notice on Mana.  They offer no evidence to support either request, however, and are accordingly entitled to no relief. The Court addresses Third Party Plaintiffs' motions and then turns to Third Party Defendants'.

## A.  Third Party Plaintiffs' Motion for Contempt and To Compel Discovery

Most of Third Party Plaintiffs' motion concerns discovery.  In particular, Third Party Plaintiffs move to compel the follow discovery from the Nye Parties: additional depositions from

---

[1]      Since this motion became fully briefed, Third Party Plaintiffs have filed requests to extend the restraining notices on Mana and other nonparties, which the Court has granted.  (*See* Docket Nos. 406, 411).

Nye, Foundation 20 21, and Nyehaus; complete responses to information subpoenas from Nye, Foundation 20 21, Nyehaus, and SEP; and complete responses to the document requests that were the subject of the March 4th Order from Nye, Foundation 20 21, and Nyehaus.  (*See* Mem. Law Supp. Mot. Contempt, To Compel, for Fees, & To Require Turnover Art ("Third Party Pls.' Mem.") (Docket No. 315) 21-22).  Third Party Plaintiffs also ask this Court to find that the Nye Parties have waived any attorney-client privilege over responsive documents and to find that Nye improperly asserted his Fifth Amendment privilege against self-incrimination at his deposition and in response to document requests and an information subpoena.  (*See id.* at 10-12, 13-15).  In light of these alleged discovery failures, Third Party Plaintiffs also ask that the Court hold the Nye Parties in contempt or subject them to sanctions.

The Court begins with the issue of contempt.  "A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."  *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal quotation marks omitted); *see Servaas Inc. v. Rep. of Iraq*, No. 09-CV-1862 (RMB), 2014 WL 279507, at *2 (S.D.N.Y. Jan. 24, 2014) (applying the civil contempt standard to violations of post-judgment discovery orders).  An order is "clear and unambiguous" when it "leaves no uncertainty in the minds of those to whom it is addressed."  *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (internal quotation marks omitted).  The burden of proving noncompliance is on the party seeking the sanction, and is satisfied by "a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred."  *SEC v. Mattera*, No. 11-CV-8323 (PKC), 2012 WL 4450999, at *11 (S.D.N.Y. Sept. 26, 2012) (internal quotation

marks omitted) (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002)).  As for

the third element, the party from whom discovery was sought must show that compliance was

"factually impossible."  *Id.* at *12 (internal quotation marks omitted).

Applying those standards here, a finding of contempt is amply justified.  First, the

Court's March 4th Order was clear and unambiguous insofar as it required the Nye Parties to

comply with specific discovery requests.  (Notably, the Nye Parties do not argue otherwise.)

Second, Third Party Plaintiffs cite a plethora of purported discovery failures, and the Court finds

that they have provided clear and convincing evidence that, among other things: (1) Nye violated

the Order by failing to produce all responsive documents and fully replying to the information

subpoena; (2) Foundation 20 21 violated the Order by failing to produce all responsive

documents; (3) Nyehaus violated the Order by failing to produce all responsive documents; and

(4) SEP violated the Order by failing to respond fully to the information subpoena.  For example,

in direct contravention of Third Party Plaintiffs' requests and the March 4th Order, Nyehaus has

produced no Quickbooks and Foundation 20 21 has produced only those for 2011 and 2012 (*see*

Nye Parties' Opp'n 9); Foundation has refused to produce documents regarding sales and

attempted sales of artwork (*see* Hoffman Contempt Decl., Ex. I, at 20-21); Nyehaus appears to

have produced virtually no documents (*compare id.* ¶ 23, *with* Nye Parties' Opp'n 8-11); and

Nye asserted has his Fifth Amendment privilege to every question in the information subpoena,

even those that, as discussed below, involved businesses entities to which the privilege would not

apply (*see* Hoffman Contempt Decl., Ex. M).  Further, they do not appear to have supplemented

their document productions as necessary.  (*See, e.g.*, Nye Parties' Opp'n 9 (noting that Nye has

provided bank account statements only through February 2015)).

Finally, the Nye Parties have not shown that they diligently attempted to comply with the March 4th Order in a reasonable manner.  The limited number of documents that they produced are only a fraction of what was presumably responsive to Third Party Plaintiffs' requests for voluminous financial and business records.  (*See* Nye Parties' Opp'n 9-11).  They offer no explanation for their failure to produce all Quickbooks through the present.  (*See id.* at 11; Third Party Pls.' Reply Br. Further Supp. Mot. Contempt (Docket No. 368) ("Third Party Pls.' Reply") 3-4).  They do not come close to justifying their objections as to burden or relevance.  And their argument that the remainder of the responsive documents were produced during the underlying litigation rings hollow.  (*See* Nye Parties' Opp'n 8-11).  For one thing, the Nye Parties did not cite their supposed previous production at the discovery conference that led to the March 4th Order; as written, therefore, the Order calls for production of all responsive documents, without regard for the Nye Parties' prior productions.  For another, the previous productions did not respond to the entirety of Third Party Plaintiffs' discovery requests and this Court's Order, and would not have included any documents from non-party Nyehaus.

SEP's response to Third Party Plaintiffs' information subpoena is also patently in violation of the March 4th Order.  SEP gave blanket objections even to questions asking for innocuous and plainly relevant information, such as Third Party Plaintiffs' request for SEP to "list . . . all assets within your possession, custody and control" (Request No. 2), to describe its books and financial records and their location (Request No. 7), and to indicate whether it had filed tax returns since 2012 (Request No. 12).  (Hoffman Contempt Decl., Ex. A).  Additionally, SEP gives no reason why it would be "unduly burdensome" to provide information that predates November 18, 2014, or any of the other information to which it objects.  (*See id.*, Ex. A ¶ I).  Notably, the Nye Parties' opposition brief does not even attempt to justify these failures, instead

blaming former counsel for the insufficient responses and stating that the responses would be supplemented, more than five months after the Court had ordered complete responses.  That excuse is unavailing — SEP was bound to comply with this Court's orders, regardless of any shortcomings on the part of prior counsel.  *See, e.g.*, *Martinez v. City of N.Y.*, No. 11-CV-7461 (JMF), 2012 WL 5438914, at *2 (S.D.N.Y. Nov. 7, 2012); *Davidowitz v. Patridge*, No. 08-CV-6962 (NRB), 2010 WL 1779279, at *4 (S.D.N.Y. Apr. 23, 2010).

Accordingly, the Court holds the Nye Parties in contempt for their violations of the March 4th Order and hereby sanctions Nyehaus, Foundation 20 21, and SEP, collectively, for $5,000, payable to the Clerk of Court.  (*See* Third Party Pls.' Mem. 19).  (The Court refrains from sanctioning Nye himself — at least for now — pending adjudication of whether and to what extent his invocation of the Fifth Amendment privilege against self-incrimination was improper.  *See infra*.)  Further, **within three weeks of the date of this Opinion and Order**, Nye, Foundation 20 21, and Nyehaus shall produce all documents responsive to Third Party Plaintiffs' First Set of Document Requests (including those implicating attorney-client privilege, as discussed below).  If a party finds that no responsive documents exist as to any request, that party shall submit an affidavit to Third Party Plaintiffs describing, with specificity, the steps that it *and its counsel* took to preserve, search for, and review documents for responsiveness to that request.  Failure to do so may result in further sanctions and a finding of contempt against the Nye Parties and counsel.  Further, by the same date, Nye and SEP shall file amended responses to the information subpoenas.  Failure to timely comply with this Order will result in further sanctions of $100 per day until substantial compliance is achieved.  The Court finds that these sanctions are narrowly tailored to ensure compliance with the Court's orders and to deter future misconduct on the part of the Nye Parties; furthermore, monetary sanctions are appropriate given

that other sanctions (such as striking pleadings or directing adverse inferences) are not available. *See Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302-303 (2d Cir. 2009); *Servaas*, 2014 WL 279507, at *3.[2]

Next, Third Party Plaintiffs ask that Nyehaus and Foundation 20 21 produce new Rule 30(b)(6) witnesses.  (*See* Third Party Pls.' Mem. 12-13; Third Party Pls.' Reply 13-14).  A party answering a Rule 30(b)(6) notice must "prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys., LLC*, No. 10-CV-1391 (LGS) (JCF), 2013 WL 1286078, at *2 (S.D.N.Y. Mar. 28, 2013) (internal quotation marks omitted).  The designated witness need not be the *most* knowledgeable available representative, but only "a person with knowledge whose testimony will be binding on the party." *Rodriguez v. Pataki*, 293 F. Supp. 2d 305, 311 (S.D.N.Y. 2003).  To incur sanctions from inadequate Rule 30(b)(6) testimony, "the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas." *Eid v. Koninklijke Luchtvaart Maatschappij N.V.*, No. 14-CV-9066 (PKC) (FM), 2015 WL 5772951, at *2 (S.D.N.Y. Oct. 2, 2015) (internal quotation marks omitted).

Applying those standards here, the Court concludes that there is no basis for additional or separate sanctions — or even for supplemental Rule 30(b)(6) depositions.  Danielle Forest, the manager of Nyehaus, served as the Rule 30(b)(6) representative for both Foundation 20 21 and Nyehaus.  (*See* Forest Contempt Affidavit ¶¶ 3, 9).  Third Party Plaintiffs' chief complaints

---

[2]     Notwithstanding Third Party Plaintiffs' request (*see* Third Party Pls.' Mem. 18-19), the Court believes that Nye's incarceration is unwarranted at this point.  Nevertheless, he is warned that, should he remain in contempt of Court, further sanctions up to and including incarceration may be imposed.

about her testimony are that she did not know where certain pieces of art were located and was not familiar with specific documents she was shown at her deposition.  (*See* Third Party Pls.' Mem. 12-13).  Forest's testimony, however, was not so deficient as to justify either sanctions or another deposition.  Forest was familiar with the procedures, policies, and reports of the two organizations.  (*See, e.g.*, Hoffman Contempt Decl., Ex. D, at 220, 226, 268-70).  And to the extent she was unable to testify as to artwork currently or previously owned by the organizations, she later provided some information in an affidavit.  (*See* Forest Contempt Affidavit, Exs. A-B). In short, any deficiencies in her deposition testimony were by no means "egregious."  *Eid*, 2015 WL 5772951, at *2.

The Court does find, however, that the Nye Parties have each waived their attorney-client privilege with regard to any documents responsive to the Third Party Plaintiffs' First Set of Document Requests.  Third Party Plaintiffs state, and the Nye Parties do not deny, that the Nye Parties did not serve a single privilege log in conjunction with their responses and objections. (*See* Third Party Pls.' Mem. 12; Nye Parties' Opp'n 16).  The Nye Parties' anemic response to Third Party Plaintiffs' argument that this constitutes waiver is that they informed Third Party Plaintiffs that "privileged communications were not being produced" — and that former counsel "inexplicably" failed to produce a privilege log.  (Nye Parties' Opp'n 16).  A party's failure to provide a timely or complete privilege log as required by Rules 26(b)(5) and 45(e)(2) of the Federal Rules of Civil Procedure and Local Civil Rule 26.2, however, can result in a waiver of the privilege.  *See Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 165-66 (2d Cir. 1992); *SEC v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 157-58 (S.D.N.Y. 2014) (citing cases).  It follows that merely telling an adversary that privileged communications are not being produced is insufficient to prevent waiver.  Further, even if the failure to produce a log was due

to lack of action on the part of prior counsel, that is not a valid excuse.  *See Davidowitz*, 2010 WL 1779279, at *4.  Accordingly, the privilege has been waived.

Although Third Party Plaintiffs argue that Nye also waived his Fifth Amendment privilege — by agreeing to produce some documents — the Court disagrees.  (*See* Third Party Pls.' Mem. 13-15; Hoffman Decl., Ex. H).  In order to find a Fifth Amendment waiver, a witnesses' prior statements must have been testimonial, incriminating, and "create[] a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth."  *United States v. Basciano*, 430 F. Supp. 2d 87, 94-95 (E.D.N.Y. 2006) (citing *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir. 1981)).  Nye's initial agreement to produce certain responsive documents does not appear to have been incriminating or to have led to a distorted view of the truth.  Nevertheless, the Court agrees with Third Party Plaintiffs that, to at least some extent, Nye's assertions of the Fifth Amendment have been unfounded and improper.  A party may refuse to answer a deposition question on account of the privilege against self-incrimination in "instances where the witness has a reasonable cause to apprehend danger from a direct answer."  *Hoffman v. United States*, 341 U.S. 479, 486 (1951); *see United States v. Arias*, 404 F. App'x 554, 556 (2d Cir. 2011) (summary order); *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 262 F. Supp. 2d 302, 306 (S.D.N.Y. 2003).  The witness must have "reasonable cause to apprehend that answering the question will provide the government with evidence to fuel a criminal prosecution," *OSRecovery*, 262 F. Supp. 2d at 306, and "[t]he danger of self-incrimination must be real, not remote or speculative," *Estate of Fisher v. Comm'r of IRS*, 905 F.2d 645, 649 (2d Cir. 1990) (citing *Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 478 (1972)).

The burden is on the party asserting the privilege to show that its invocation is proper, and it is for the Court to determine whether the privilege applies based on "all of the

circumstances of the case." *Krape v. PDK Labs, Inc.*, No. 02-CV-3440 (DRH) (ETB), 2004 WL 831137, at *3-4 (E.D.N.Y. Apr. 19, 2004).  Furthermore, the privilege does not apply to corporate entities, to business records, or to records whose creation is required by law (such as tax returns).  *See Braswell v. United States*, 487 U.S. 99 (1988); *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 157 (2d Cir. 2010) (per curiam); *In re Doe*, 711 F.2d 1187, 1191 (2d Cir. 1983); *SEC v. Ryan*, 747 F. Supp. 2d 355, 364 (N.D.N.Y. 2010).  *But cf. In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d 339, 343 (2d Cir. 2013) (describing the act of production doctrine).  Courts therefore routinely scrutinize deposition questions and witnesses' proffered Fifth Amendment explanations as part of "a particularized inquiry to determine whether the [F]ifth [A]mendment assertion was founded on a reasonable fear of prosecution as to each of the posed questions."  *United States v. Bowe*, 698 F. 2d 560, 566 (2d Cir. 1983) (internal quotation marks and alterations omitted).  Questions that have no connection to a reasonable fear of prosecution — for example, "innocuous questions" such as whether a witness owns or rents his home — must be answered.  *OSRecovery*, 262 F. Supp. 2d at 307.

Here, there are two issues with respect to Nye's invocation of his Fifth Amendment privilege.  First, Nye invoked the privilege with respect to each and every question at his deposition, many of which were either "innocuous" on their face or involved businesses and business records and, thus, are unlikely to fall within the scope of his Fifth Amendment privilege.  For example, Nye refused to answer the following questions:

- "Are you presently employed?" (Hoffman Contempt Decl., Ex. N, at 12);

- "Do you know whether [this exhibit] is an inventory list of Foundation 20 21?" (*id.* at 31);

- "Can you tell me what kind of car you own?" (*id.* at 37);

- "[C]an you name any assets owned by Nyehaus, The Sunshine Theater, Inc., Sunshine Amalgamedia, Vestry or Sunshine Equity Partners since January 1st, 2013?" (*id.* at 40).

Nye also invoked the privilege with respect to organizational information for Foundation 20 21 and Nyehaus and with respect to Nyehaus's Quickbooks, which are presumptively non-privileged business records. (*See* Hoffman Contempt Decl., Exs. S, M). Compounding matters, Nye has not even explained what basis he has to reasonably fear criminal prosecution. To the Court's knowledge, Nye has not been charged with a crime and is not under active investigation. *Cf. Krape*, 2004 WL 831137, at *6 (finding that a witness had a reasonable fear that answers would be incriminating where the witness had pleaded guilty to previous, related crimes involving the same parties); *OSRecovery*, 262 F. Supp. 2d at 307 (holding that witness could refuse to answer questions that bore on his relationship to, and knowledge of, an alleged fraud). It may be that there is a valid basis for him to invoke, but the Court is not privy to it — which, among other things, makes it impossible for the Court to adjudicate whether Nye's refusal to answer any particular question or questions is well founded or improper.

In light of the foregoing, it is plain that Nye will have to be re-deposed and that he will have to provide amended answers to the information subpoena. The question is what form that inquiry into the validity and scope of his Fifth Amendment privilege should take. The Court could conduct a hearing with respect to the basis for Nye's reasonable fear of incrimination and rule on whether Nye may plead the Fifth at all. At such a hearing, Third Party Plaintiffs could provide a limited number of representative questions and examine Nye's basis for the privilege before the Court. Alternatively, Third Party Plaintiffs could re-depose Nye (either under the Court's supervision or otherwise), and present to the Court concrete disputes with respect to the privilege's application to particular questions. In the Court's view, the parties should meet and confer with respect to an appropriate procedure in the first instance. Accordingly, **within two**

**weeks from the date of this Opinion and Order**, the parties shall submit a joint letter (in light

of the referral discussed below, however, to Magistrate Judge Fox), not to exceed five single-

spaced pages, proposing a way to proceed.  Should the parties be unable to reach agreement,

each party may submit a letter brief, not to exceed five single-spaced pages, by that same date.

Finally, Third Party Plaintiffs request that SEP provide a Rule 30(b)(6) witness and that

the Nye Parties pay attorneys' fees for the pending motion.  (Third Party Pls.' Mem. 12, 19-20).

The Nye Parties do not oppose either request.  (*See* Nye Parties' Opp'n 17).  Accordingly, SEP is

ordered to produce a witness for a deposition to be held **within thirty days of this Opinion and**

**Order**.  Third Party Plaintiffs' should submit their accounting for attorneys' fees also **within**

**thirty days of this Opinion and Order**.  As proposed by Third Party Plaintiffs, the fees should

be calculated at 75% of their counsel's regular rates.  (*See* Third Party Pls.' Mem. 19-20).

**B.  Third Party Plaintiffs' Motion For Turnover**

Third Party Plaintiffs also request that the Court order the Nye Parties to turn

over thirteen specific pieces of art named in Alison Wilbur's affidavit and, more broadly, "all

other art owned by the Judgment Debtors, wherever located."  (Third Party Pls.' Mem. 20; *see*

Hoffman Contempt Decl., Ex. T, at 8-9).  The Nye Parties "do not dispute that all of that artwork

belongs to the Judgment Creditors," but apparently have been withholding the art until they

receive their requested modifications to the restraining notice on Mana, which is discussed

below.  (Nye Parties' Opp'n 7-8, 11).  Needless to say, the Court does not look kindly upon the

Nye Parties' attempt to hold property legitimately owing to Third Party Plaintiffs hostage.

Accordingly, the Nye Parties are hereby ORDERED to turn over, **within two weeks of the date**

**of this Opinion and Order,** the thirteen pieces of art listed on pages 8-9 of the Wilbur affidavit.

(*See* Hoffman Contempt Decl., Ex. T, at 8-9).  As for the broader order Third Party Plaintiffs

seek, the Court is not prepared at this time to order turnover of unspecified and unidentified

property.  Nye and Foundation 20 21 are still bound to pay millions of dollars pursuant to the

November 18th Judgment.  Should further post-judgment discovery serve to identify other pieces

of art that could be used to satisfy that Judgment, Third Party Plaintiffs may move for an

appropriate order directing Third Party Defendants to turn them over.[3]

## C.  The Nye Parties' Request for Injunctive Relief

Next, the Court turns to the Nye Parties' motion for various forms of relief.[4]  The Nye

Parties primarily ask the Court to issue an injunction that (1) "enjoin[s] the unreasonable

disposition of collateral" by Third Party Plaintiffs and (2) "require[s] . . . the return of all

artworks, including any consigned works, not owned by the Judgment Debtors."  (Timothy

Nye's, Foundation 20 21's & Non-Party Nyehaus Inc.'s Mot. To Enjoin (Docket No. 357) ("Nye

Parties' Mem.") 18).  A party seeking a permanent injunction "must demonstrate: (1) that it has

suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

---

[3]      To the extent Third Party Defendants ask the Court to modify the works listed in the Judgment, pursuant to Rule 60 of the Federal Rule of Civil Procedure, the request is denied.  (*See* Nye Parties' Opp'n 7).  The inclusion of the works at issue was not a "clerical mistake" subject to relief under Rule 60(a).  Additionally, even if there were grounds to find that some works were included due to "inadvertence" or "excusable neglect," any motion under Rule 60(b)(1) — and Third Party Defendants do not even make a motion — would be untimely.  *See* Fed. R. Civ. P. 60(c)(1) (stating that a motion under Rule 60(b) "must be made within a reasonable time"); *SBC 2010-1, LLC v. Morton*, 552 F. App'x 9, 12 (2d Cir. 2013) (summary order) (holding that district court did not abuse its discretion in concluding that a Rule 60(b) motion was untimely when brought nearly six months after the relevant order).  Third Party Defendants have known since at least December 2014 that the works at issue were allegedly missing or unavailable.  (*See* Hogan Decl., Ex. D).  Requesting relief through an opposition memorandum of law eight months later is plainly too little and too late.

[4]      One of the Nye Parties' requests is for an accounting, which Third Party Plaintiffs have since provided.  (*See* Reply Decl. Lindsay E. Hogan, Esq. Further Supp. Mot. To Enjoin (Docket No. 398), Ex. 1).  Although the Nye Parties complain about the content of the accounting, they do not appear to renew their request or seek judicial intervention.  (*See* Nye Parties' Reply Mem. 2, 10).  Accordingly, the motion for an accounting is DENIED as moot.

inadequate to compensate for that injury; (3) that, considering the balance of hardships between the [parties], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see Fort v. Am. Fed'n of State, Cty., & Mun. Emps.*, 375 F. App'x 109, 112 (2d Cir. 2010); *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006); *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999).  In light of those requirements, the Nye Parties' request is easily rejected.

First and foremost, the Nye Parties make no attempt to show that they are suffering or will suffer irreparable harm either as a result of Third Party Plaintiffs' purported delay in selling the artwork in their possession or from their retention of art allegedly belonging to others.  (*See* Mem. Opp'n Mot. Nye Parties Injunction & Other Relief (Docket No. 380) 16, 18, 20).  Indeed, much of the harm they do allege — none of which is substantiated by affidavits or other evidence — could concededly be remedied by money damages.  (*See* Nye Parties' Mem. 5 (complaining that Third Party Plaintiffs sold consigned artwork "without remitting to the artists a dime"), Timothy Nye's, Foundation 20 21's & Non-Party Nyehaus Inc.'s Reply Mem. Law Further Supp. Mot. To Enjoin (Docket No. 397) ("Nye Parties' Reply Mem.") 6 (alleging that the Nye Parties "have sustained money damages as a result of the Judgment Creditors' conduct where the Judgment Creditors were able to surreptitiously sell works at fire-sale prices")).  And the Nye Parties' references to reputational harm are speculative and wholly unsupported.  (*See* Nye Parties' Mem. 10, 13; Nye Parties' Reply Mem. 6).  In any event, even if the Nye Parties had been able to show irreparable harm (to say nothing of the remaining factors necessary for injunctive relief), the Court has serious concerns about the viability of their claims on the merits. The gravamen of the Nye Parties' complaint with respect to Third Party Plaintiffs' disposition of

collateral is that Third Party Plaintiffs are selling some artwork for too little and refusing to sell

other pieces.  (*See* Nye Parties' Mem. 10-13).  But the Nye Parties do not show that the prices

obtained at auction are so low as to "shock the court's conscience," *Crossland Mortg. Corp. v.*

*Frankel*, 192 A.D. 2d 571, 572 (1993), or provide evidence that Third Party Plaintiffs' attested

efforts to find the best sale venue for the art run afoul of the Uniform Commercial Code's

allowance for "any commercially reasonable preparation or processing," N.Y. U.C.C. § 9-610(a).

(*See* Rose Vacate Decl. ¶ 15).  As for Third Party Plaintiffs' alleged retention and sale of works

belonging to third parties, there is good reason to believe that the Nye Parties have no standing to

assert these claims and that the third parties themselves would have to move for the return of the

art.  *See, e.g.*, *Neshewat v. Salem*, 365 F. Supp. 2d 508, 524 (S.D.N.Y. 2005) (noting that where a

judgment creditor proceeds against property in which a third party has an interest, the third party

is entitled to intervene).  In any case, the utter failure to show irreparable harm is sufficient

ground in itself for denial of the requested injunctive relief.

**D.  The Mana Restraining Notice**

Finally, the Nye Parties request that the Court lift, or at least modify, the restraining order

on Mana.  (*See* Nye Parties' Mem. 14-17; Nye Parties' Reply Mem. 10).  They claim that "the

vast majority of the works being held there" are on consignment from artists or are "owned by

Nyehaus in partnership with an independent art advisor."  (Nye Parties' Mem. 14).

The restraining notice was served pursuant to Federal Rule of Civil Procedure 69 and

New York Civil Practice Law and Rules Section 5222.  (*See* Hogan Injunction Decl., Ex. D).

Where, as here, the notice applies to assets in the possession of a third party, it is effective — as

a matter of law — only against property in which the judgment debtor has an interest.  *See* N.Y.

C.P.L.R. § 5222; *Preferred Display, Inc. v. CVS Pharmacy, Inc.*, 923 F. Supp. 2d 505, 509

(S.D.N.Y. 2013); *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 391 (S.D.N.Y. 2003).  Further, the judgment debtor's interest "must be a direct interest in the property itself which is leviable and not an indirect interest."  *Preferred Display*, 923 F. Supp. 2d at 509 (internal quotation marks and alterations omitted).

Third Party Plaintiffs provide a list of the property being held at Mana.  (*See* Decl. Mathew E. Hoffman (Docket No. 383) ("Hoffman Injunction Decl."), Ex. D).  From the face of the list itself, it is unclear to whom each piece belongs.  In an attempt to show that the "vast majority" of the works are owned by another party, the Nye Parties have provided affidavits from artists who allegedly consigned works to Nyehaus and UCC-1 Financing Statements that purport to show that other parties hold the security interest in the works.  (*See* Nye Parties' Mem. 14; Hogan Injunction Decl., Ex. F; Aff. Danielle Forest (Docket No. 399) ("Forest Injunction Affidavit"), Exs. 5-8).  Only one affidavit, however, appears to pertain to a work being held at Mana.  (*See* Forest Injunction Affidavit, Ex. 6 (stating that "Gold Seeds Revolve," by George Herms, was consigned to Nyehaus on September 29, 2010); Hoffman Injunction Decl., Ex. D, at 5 (listing "Gold Seeds Revolve" as among the works stored at Mana)).  As for the UCC-1 Financing Statements, they are all dated December 10, 2014.  Whether or not the third parties listed on the forms hold the entirety of the interest in those pieces of art depends on perfection and priority, and whether any prior owner — such as one of the judgment debtors — in fact holds the real security interest.  *See, e.g.*, N.Y. U.C.C. § 9-319, Cmt. 2; *In re Salander-O'Reilly Galleries, LLC*, No. 14-CV-3544 (VB), 2014 WL 7389901, at *4 (S.D.N.Y. Nov. 25, 2014) (noting that artwork provided as a security interest remained the property of the consignor because it was not properly included in the later contract).  The priority and perfection of security interests in the art would be governed by New Jersey law, because Mana is located in

that state.  *See* N.Y. U.C.C. § 9-301(b).  Without the full historical information of the artwork's ownership, however, the Court cannot determine whether the judgment debtors lack an interest in the art.  (Further, the UCC Financing Statements appear to implicate no more than twenty of the pieces being held at Mana — hardly a "vast majority" of the approximately 170 works.)  In any case, even if the judgment debtors did lack an interest in some of the artwork, the restraining notice would not need to be modified.  By its own terms, it applies only to "property of the judgment debtors Foundation 20 21 and Timothy U. Nye."  (Hogan Injunction Decl., Ex. D, at 4).  As to any piece in which the judgment debtors do not have an interest, the restraint would simply be ineffective.  *See JSC*, 295 F. Supp. 2d at 391; *AG Worldwide v. Red Cube Mgmt. AG*, No. 01-CV-1228 (GEL), 2002 WL 417251, at *8 (S.D.N.Y. Mar. 15, 2002).  Accordingly, the Nye Parties' motion to lift or modify the restraining order is DENIED.[5]

## REFERRAL TO MAGISTRATE JUDGE FOX

The present motions have been fully briefed since October 14, 2015.  In an ideal world, the Court would have been able to resolve them much sooner than today, but the demands of the Court's docket — particularly, the time and attention the Court has had to devote to *In re General Motors LLC Ignition Switch Litigation*, 14-MD-2543 (JMF), in which the Court held a bellwether trial last month and for which the Court had to decide forty or so pretrial motions in November and December 2015 — prevented the Court from doing so.  Unfortunately, the demands of the Court's docket are not likely to lighten any time soon, as there are, among other things, five more bellwether trials scheduled in the months ahead.  The Court does not want the

---

[5]     The Nye Parties' argument that the Court should grant discretionary relief is similarly without merit.  (*See* Nye Parties' Mem. 16-17).  Among other things, they provide no evidence of their claim that "Nyehaus will continue to be crippled in its ability to conduct business." (*Id.* at 16).

congestion of its docket to enable the arguably obstructionist tactics of Third Party Defendants and believes strongly that these post-judgment proceedings warrant greater oversight and attention than it is likely to be able to give in the coming months.  Accordingly, notwithstanding its familiarity with the history of this litigation, the Court has decided that it is prudent to refer the matter for all purposes to the assigned Magistrate Judge, the Honorable Kevin Nathaniel Fox. By separate Order to be entered today, the Court is making that referral.  Effective immediately, the parties shall raise any and all issues requiring Court attention, including any issues relating to compliance with this Opinion and Order, before Magistrate Judge Fox.

## CONCLUSION

For the reasons stated above, the Nye Parties' motion is DENIED in its entirety, and Third Party Plaintiffs' motion is GRANTED in part and DENIED in part.  In particular:

(1)  Within three weeks of the date of this Opinion and Order, Foundation 20 21, Nyehaus, and SEP shall pay $5,000 to the Clerk of Court;

(2)  As described above, by the same date, Nye, Foundation 20 21, and Nyehaus shall produce all documents, including those purportedly covered by the attorney-client privilege, responsive to Third Party Plaintiffs' First Set of Document Requests and Nye and SEP shall file amended responses to the information subpoenas;

(3)  SEP shall produce a witness for deposition within thirty days of the date of this Opinion and Order;

(4)  The parties shall submit a proposal or competing proposals for the re-deposition of Nye and examination of his Fifth Amendment invocation within two weeks from the date of this Opinion and Order;

(5)  Within two weeks of the date of this Opinion and Order, the Nye Parties shall turn over the thirteen pieces of art listed in the Wilbur affidavit; and

(6)  The Nye Parties shall pay 75% of Third Party Plaintiffs' reasonable attorneys' fees and costs, pursuant to an accounting submitted by Third Party Plaintiffs within thirty days of the date of this Opinion and Order.  Any opposition to the accounting shall be filed within two weeks of its submission.

Any failure by one of the Nye Parties to timely comply with this Opinion and Order will result in further sanctions of $100 per day until substantial compliance is attained.

Finally, in conjunction with this motion, the parties filed certain documents under seal or in redacted form.  (*See, e.g.*, Docket Nos. 318, 368, 380).  The Court is hard pressed to see the basis to keep those documents under seal or redacted, but will give the parties an opportunity to be heard on the issue.  Accordingly, any party wishing to keep any of those documents sealed or redacted shall file a letter brief, not to exceed five pages and no later than **February 11, 2016**, addressing the propriety of sealing or redacting the relevant documents in light of the presumption in favor of public access to judicial documents.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).

The Clerk of Court is directed to terminate Docket Nos. 314 and 356.

SO ORDERED.

Date:   February 5, 2016
        New York, New York

JESSE M. FURMAN
United States District Judge